POSNER, Circuit Judge,
concurring.
I agree that the district court should be affirmed — and indeed I disagree with nothing in the court’s opinion. I write separately only to express concern with Federal Rules of Evidence 803(1) and (2), which figure in this case. That concern is *800 expressed in a paragraph of the majority opinion; I seek merely to amplify it.
Portis’s conversation with the 911 operator was a major piece of evidence of the defendant’s guilt. What she said in the conversation, though recorded, was hearsay, because it was an out-of-court statement offered “to prove the truth of the matter asserted,” Fed.R.Evid. 801(c)(2)— namely that the defendant (Boyce) had a gun — rather than to rebut a charge of recent fabrication or of a recently formed improper motive, Fed.R.Evid. 801(d)(1)(B), by showing that the person making the statement had said the same thing before the alleged fabrication or the formation of the improper motive. 30B Michael H. Graham, Federal Practice & Procedure § 7012, pp. 128-45 (interim ed.2011). But the government argued and the district court agreed that Portis’s recorded statement was admissible as a “present sense impression” and an “excited utterance.” No doubt it was both those things, but there is profound doubt whether either should be an exception to the rule against the admission of hearsay evidence.
One reason that hearsay normally is inadmissible (though the bar to it is riddled with exceptions) is that it often is no better than rumor or gossip, and another, which is closely related, is that it can’t be tested by cross-examination of its author. But in this case either party could have called Portis to testify, and her testimony would not have been hearsay. Neither party called her — the government, doubtless because Portis recanted her story that Boyce had had a gun after he wrote her several letters from prison asking her to lie for him and giving her detailed instructions on what story she should make up; Boyce, because her testimony would have been likely to reinforce the evidence of the letters that he had attempted to suborn perjury, and also because his sexual relationship with Portis began when she was only 15. Boyce’s counsel said “the concern is that if Ms. Portis were to testify, she does look somewhat young and so the jury could infer ... that this relationship could have started when she was underage.”
To get her recorded statement admitted into evidence, the government invoked two exceptions to the hearsay rule. One, stated in Rule 803(1) and captioned “present sense impression,” allows into evidence “a statement describing or explaining an event or condition, made while or immediately after the declarant perceived it.” The other — the “excited utterance” exception of Rule 803(2) — allows into evidence “a statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused.”
The rationale for the exception for a “present sense impression” is that if the event described and the statement describing it are near to each other in time, this “negate[s] the likelihood of deliberate or conscious misrepresentation.” Advisory Committee Notes to 1972 Proposed Rules. I don’t get it, especially when “immediacy” is interpreted to encompass periods as long as 23 minutes, as in United States v. Blakey, 607 F.2d 779, 785-86 (7th Cir.1979), 16 minutes in United States v. Mejia-Velez, 855 F.Supp. 607, 614 (E.D.N.Y.1994), and 10 minutes in State v. Odom, 316 N.C. 306, 341 S.E.2d 332, 335-36 (1986). Even real immediacy is not a guarantor of truthfulness. It’s not true that people can’t make up a lie in a short period of time. Most lies in fact are spontaneous. See, e.g., Monica T. Whitty et al., “Not All Lies Are Spontaneous: An Examination of Deception Across Different Modes of Communication,” 63 J. Am. Society of Information Sci. & Technology 208, 208-09, 214 (2012), where we read that “as with previous research, we found that *801 planned lies were rarer than spontaneous lies.” Id. at 214. Suppose I run into an acquaintance on the street and he has a new dog with him — a little yappy thing— and he asks me, “Isn’t he beautiful”? I answer yes, though I’m a cat person and consider his dog hideous.
I am not alone in deriding the “present sense impression” exception to the hearsay rule. To the majority opinion’s quotation from Lust v. Sealy, Inc., 388 F.3d 580, 588 (7th Cir.2004) — “as with much of the folk psychology of evidence, it is difficult to take this rationale [that immediacy negates the likelihood of fabrication] entirely seriously, since people are entirely capable of spontaneous lies in emotional circumstances” — I would add the further statement that “ ‘old and new studies agree that less than one second is required to fabricate a lie.’ ” Id., quoting Douglas D. McFarland, “Present Sense Impressions Cannot Live in the Past,” 28 Fla. State U.L.Rev. 907, 916 (2001); see also Jeffrey Bellin, “Facebook, Twitter, and the Uncertain Future of Present Sense Impressions,” 160 U. Pa. L. Rev. 331, 362-66 (2012); I. Daniel Stewart, Jr., “Perception, Memory, and Hearsay: A Criticism of Present Law and the Proposed Federal Rules of Evidence,” 1970 Utah L.Rev. 1, 27-29. Wigmore made the point emphatically 110 years ago. 3 John Henry Wig-more, A Treatise on the System of Evidence in Trials at Common Law § 1757, p. 2268 (1904) (“to admit hearsay testimony simply because it was uttered at the time something else was going on is to introduce an arbitrary and unreasoned test, and to remove all limits of principle”).
It is time the law awakened from its dogmatic slumber. The “present sense impression” exception never had any grounding in psychology. It entered American law in the nineteenth century, see Jon R. Waltz, “The Present Sense Impression Exception to the Rule Against Hearsay: Origins and Attributes,” 66 Iowa L.Rev. 869, 871 (1981), long before there was a field of cognitive psychology; it has neither a theoretical nor an empirical basis; and it’s not even common sense — it’s not even good folk psychology.
The Advisory Committee Notes provide an even less convincing justification for the second hearsay exception at issue in this case, the “excited utterance” rule. The proffered justification is “simply that circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication.” The two words I’ve italicized drain the attempted justification of any content. And even if a person is so excited by something that he loses the capacity for reflection (which doubtless does happen), how can there be any confidence that his unreflective utterance, provoked by excitement, is reliable? “One need not be a psychologist to distrust an observation made under emotional stress; everybody accepts such statements with mental reservation.” Robert M. Hutchins & Donald Slesinger, “Some Observations on the Law of Evidence: Spontaneous Exclamations,” 28 Colum. L.Rev. 432, 437 (1928). (This is more evidence that these exceptions to the hearsay rule don’t even have support in folk psychology.)
As pointed out in the passage that the majority opinion quotes from the McCormick treatise, “The entire basis for the [excited utterance] exception may ... be questioned. While psychologists would probably concede that excitement minimizes the possibility of reflective self-interest influencing the declarant’s statements, they have questioned whether this might be outweighed by the distorting effect of shock and excitement upon the declarant’s observation and judgement.” 2 McCor *802 mick on Evidence § 272, p. 366 (7th ed.2013).
The Advisory Committee Notes go on to say that while the excited utterance exception has been criticized, “it finds support in cases without number.” I find that less than reassuring. Like the exception for present sense impressions, the exception for excited utterances rests on no firmer ground than judicial habit, in turn reflecting judicial incuriosity and reluctance to reconsider ancient dogmas.
I don’t want to leave the impression that in questioning the present sense and excited utterance exceptions to the hearsay rule I want to reduce the amount of hearsay evidence admissible in federal trials. What I would like to see is Rule 807 (“Residual Exception”) swallow much of Rules 801 through 806 and thus many of the exclusions from evidence, exceptions to the exclusions, and notes of the Advisory Committee. The “hearsay rule” is too complex, as well as being archaic. Trials would go better with a simpler rule, the core of which would be the proposition (essentially a simplification of Rule 807) that hearsay evidence should be admissible when it is reliable, when the jury can understand its strengths and limitations, and when it will materially enhance the likelihood of a correct outcome.